In re Guardianship of TAUESE AUELUA

In re Guardianship of FO'I AGASIVA
and OPAALO AGASIVA

DEVELOPMENT BANK OF AMERICAN SAMOA,
Guardian of the Estates, Petitioner

High Court of American Samoa
Trial Division

PR No. 14-65
PR No. 10-80

March 4, 1988

Before REES, Chief Justice.

Counsel: For Petitioner, Steven H. Watson

On Request to Approve Annual Accountings:

The High Court recently conducted a review of
its guardianship files. The primary purpose of
this exercise was to identify guardianships that
should be terminated because the circumstances
giving rise to them (in most cases the need to
administer property belonging to a minor) had
ended. The review also called to the Court's
attention a number of cases in which the guardian
had failed to make required reports to the Court.
In these cases the Court ordered that such reports
be made within thirty days.

These two cases concern adults who were
adjudged incompetent to manage their property and
for whom the Development Bank of American Samoa was
therefore appointed guardian. In PR No. 14-65 a

guardian was first appointed in 1965 and regular annual reports were made through 1982. In January of 1983 the Court approved the expenditure of about half the money in the fund ($5101.60) for the improvement of a house in which the ward was living, on condition that written receipts for all expenditures be submitted to the Court. No such receipts were ever submitted and no annual report was filed for 1983 or any subsequent year. In PR No. 10-80 a guardian was appointed in 1980 and an annual report was filed for that year but for no subsequent year.

In response to the Court's order for status reports on these two cases the Development Bank has submitted "annual accountings" indicating that all the money in each account was expended in the first year for which an annual report is overdue. No information is supplied about how the money was spent, to whom it was disbursed, or why it was disbursed without court approval. (The advance approval of the Court had been sought for all previous disbursements in each of these cases, and in No. 14-65 there was an explicit order to the effect that written receipts must be supplied to the Court.) We do not even know, and possibly the guardian does not know, whether the wards are dead or alive.

A fiduciary cannot discharge his accounting and reporting obligations merely by informing the Court that all the money is gone. The Court understands that the management of the Development Bank has changed hands several times since the early 1980s and that present management is not personally responsible for any breaches in fiduciary obligations that may have occurred during that time. Before the Court can decide what to do about these matters, however, it is necessary to get a clearer picture of what happened. This can probably be obtained from copies of the Bank's records concerning the expenditures in question, supplemented if necessary by sworn statements from the present and former Bank officials and employees who handled the transactions and from the wards or their relatives. If the Bank prefers to proceed by means of hearings in open court, the Court's resources (including the subpoena power) are of course available. The Bank should file revised reports or schedule hearings in these cases by April 4.